**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| WHITNEY GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    1:15-cv-249 |
| | ) | |
| DIVERSIFIED CONSULTANTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**PLAINTIFF'S COMPLAINT**</u>

Plaintiff, WHITNEY GRIFFITH ("Plaintiff"), through her attorneys, Hormozdi Law Firm, LLC, alleges the following against Defendant, DIVERSIFIED CONSULTANTS, INC. ("Defendant"):

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. ("FDCPA").

2. Count II of Plaintiff's Complaint is based on the Florida Consumer Collection Practices Act, Fla. Stat. §559.72 ("FCCPA").

3. Count III of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. §227, et seq. ("TCPA").

4. The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

1

5.   In enacting the TCPA, Congress intended to give consumers a choice as to how corporate

similar entities may contact them, and made specific findings that "[t]echnologies that

might allow consumers to avoid receiving such calls are not universally available, are

costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA,

Pub. L. No. 102–243, § 11. In support of this, Congress found that

> [b]anning such automated or prerecorded telephone calls to the
> home, except when the receiving party consents to receiving the call
> or when such calls are necessary in an emergency situation affecting
> the health and safety of the consumer, is the only effective means
> of protecting telephone consumers from this nuisance and privacy
> invasion.

*Id*. at § 12: *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838,

at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

6.   Congress also specifically found that "the evidence presented to the Congress indicates that

automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the

type of call…." *Id.* at §§ 12-13; *see also Mims*, 132 S. Ct. at 744.

7.   As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding

calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act …  is well known for its
> provisions limiting junk-fax transmissions. A less-litigated part of
> the Act curtails the use of automated dialers and prerecorded
> messages to cell phones, whose subscribers often are billed by the
> minute as soon as the call is answered—and routing a call to
> voicemail counts as answering the call. An automated call to a
> landline phone can be an annoyance; an automated call to a cell
> phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

## JURISDICTION AND VENUE

8.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. §1692k (FDCPA).

9.  Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

10. This Court has jurisdiction over Plaintiff's TCPA claim pursuant to *Mims v. Arrow Financial Svcs. LLC*, 132 S. Ct. 740, 2012 WL 125249 (Jan. 18, 2012).

11. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

12. Plaintiff is a natural person residing in Gainesville, Alachua County, Florida.

13. Plaintiff is a consumer as that term is defined by the FDCPA and the FCCPA.

14. Plaintiff allegedly owes a debt as that term is defined by the FDCPA and the FCCPA.

15. Defendant is a debt collector as that term is defined by the FDCPA and the FCCPA.

16. Within the last year, Defendant attempted to collect a consumer debt from Plaintiff.

17. Defendant is a national collection agency headquartered in Jacksonville, Florida.

18. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

19. When an unpaid, outstanding account is placed with Defendant it is assigned a file number.

20. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

21. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

22. During the course of its attempts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

23. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

24. Defendant is attempting to collect a consumer debt from Plaintiff.

25. Plaintiff's alleged debt owed arises from transactions for personal, family, and household purposes.

26. Within the past year, Defendant began calling Plaintiff in an attempt to collect the alleged debt.

27. Defendant called Plaintiff on Plaintiff's cellular telephone, ending in 3409, in an attempt to collect the alleged debt.

28. Defendant calls Plaintiff from 954-362-9769, which is one of Defendant's telephone numbers.

29. Within the past year, on more than one occasion, Plaintiff told Defendant to stop calling.

30. Despite Plaintiff's request, Defendant's collectors continued to call Plaintiff numerous times in an attempt to collect on the alleged debt.

31. Defendant calls Plaintiff at an annoying and harassing rate.

32. On or around May 14, 2015, Defendant called Plaintiff at 10:15 p.m.

33. Defendant's collector were working within the scope of their employment when placing

collection calls to Plaintiff

34. Defendant's collectors are familiar with the FDCPA.

35. Defendant's collectors know that the FDCPA prohibits debt collectors from communicating with a consumer after 9 o'clock postmeridian, local time at the consumer's location.

36. Defendant called Plaintiff using an autodialer system.

37. Defendant used an "automatic telephone dialing system", as defined by 47 U.S.C.§227(a)(1), to place its repeated collection calls to Plaintiff seeking to collect the debt  allegedly owed.

38. Defendant made  numerous telephone calls to  Plaintiff's cellular telephone. The telephone numbers that Defendant used to contact Plaintiffs with an "automatic telephone dialing system," were assigned to cellular telephone services as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

39. Defendant used the LiveVox system to make collection calls to Plaintiff.

40. Each morning, Defendant's employee loads into the LiveVox system approximately three to three-and-one-half million phone numbers.

41. Using the LiveVox system, Defendant calls upwards of ninety percent of those phone numbers on a daily basis.

42. The inputted phone numbers are stored until midnight, when they are wiped from the system.

43. The LiveVox system selects the numbers to be called according to a protocol or strategy entered by Defendant.

44. When a call is answered, the LiveVox dialing system connects the called party with a live

representative of Defendant.

45. When Defendant's representative is ready to begin communicating with debtors, the representative logs into the LiveVox system and toggles a button within the application indicating that the representative is ready to receive live callers.

46. Using a pre-programmed algorithm designed to limit the amount of time between calls, LiveVox begins to simultaneously call multiple debtors.

47. Defendant's representative receives an audible "beep" in their headset once the LiveVox system connects with a debtor and transfers the call.

48. The LiveVox dialing system "operates exactly as a predictive dialer would."

49. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A).

50. Defendant frequently uses skip-tracing services to locate telephone numbers used by consumers whom Defendant wishes to call.

51. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

52. Plaintiff is not a customer of Defendant's services, has never provided any personal information, including Plaintiff's cellular telephone number, to Defendant for any purpose whatsoever.

53. Plaintiff never provided Plaintiff's cellular telephone number to Defendant and never provided Plaintiff's consent to Defendant to be contacted on Plaintiff's cellular telephone.

54. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on

Plaintiff's cellular telephone pursuant to 47 U.S.C. §227(b)(1)(A).

55. Even if Defendant at one time had consent to place calls to Plaintiff's cellular telephone number, it no longer has consent to call Plaintiff after Plaintiff orally revoked such consent.

56. Despite  this, Defendant continued to place repeated collection calls to Plaintiff, on Plaintiff's cellular telephone, using an "automated telephone dialing system."

57. Defendant has not provided Plaintiff with any written notice in connection with the collection of the debt Plaintiff allegedly owes to Defendant.

58. The  natural consequences of  Defendant's statements and actions was to produce  an unpleasant and/or hostile situation between Defendant and Plaintiff.

59. The natural consequences of Defendant's statements and actions was to cause Plaintiff mental distress.

60. On or about May 15, 2015, Plaintiff's attorney mailed a cease and desist request to Defendant at 10550 Deerwood Park Blvd, Suite 309, Jacksonville,  FL 32256.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

61. Defendant violated the FDCPA based on the following:

    a. Defendant violated §1692c(a)(1) of the FDCPA by communicating with a consumer after 9 o'clock postmeridian time, when Defendant's collector placed at least one collection call to Plaintiff at 10:15 p.m.;

    b. Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, and abuse any person in connection with the collection of an alleged debt when Defendant has continued to place numerous collection calls to Plaintiff, despite being told by Plaintiff to stop calling

her; and

    c. Defendant violated §1692d(5) of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass any person at the called number when Defendant has continued to place numerous collection calls to Plaintiff, despite being told by Plaintiff to stop calling her.

WHEREFORE, Plaintiff, WHITNEY GRIFFITH, respectfully requests judgment be entered against Defendant, DIVERSIFIED CONSULTANTS, INC., for the following:

62. Statutory damages of $1,000.00 pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692k,

63. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692k, and

64. Any other relief that this Honorable Court deems appropriate.

**COUNT II**
**DEFENDANT VIOLATED THE**
**FLORIDA CONSUMER COLLECTION PRACTICES ACT**

65. Plaintiff repeats and realleges paragraphs 1-60 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

66. Defendant violated the FCCPA based on the following:

    a. Defendant violated the §559.72(7) of the FCCPA by willfully communicating with the debtor with such frequency as can reasonably be expected to harass the debtor or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor.

WHEREFORE, Plaintiff, WHITNEY GRIFFITH, respectfully requests judgment be entered against Defendant, DIVERSIFIED CONSULTANTS, INC., for the following:

67. Statutory damages of $1,000.00 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77,

68. Costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77, and

69. Punitive damages and equitable relief, including enjoining Defendant from further violations, pursuant to Florida Consumer Collection Practices Act, Fla. Stat. 559.77(2); and

70. Any other relief that this Honorable Court deems appropriate.

## COUNT III
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

71. Plaintiff repeats and re-alleges paragraphs 1-60 of Plaintiff's Complaint as the allegations in Count III of Plaintiff's Complaint.

72. Defendant made unsolicited commercial phone calls to the wireless telephone number of Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, *as* evidenced by the pre-recorded nature of the calls.

73. These phone calls were made without the prior express consent of Plaintiff.

74. Defendant's conduct therefore violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. §227 (b)(1)(A)(iii) when Defendant placed collection calls to Plaintiff's cellular phone and there was a delay when Plaintiff answered the phone before being connected to a live collector, even after Plaintiff had revoked

consent.

WHEREFORE, Plaintiff, WHITNEY GRIFFITH, respectfully requests judgment be entered against Defendant, DIVERSIFIED CONSULTANTS, INC., for the following:

75. As a result of Defendant's negligent violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).

76. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) and 47 U.S.C. 227(b)(3)(C).

77. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

78. Any other relief that this Honorable Court deems appropriate.


RESPECTFULLY SUBMITTED,


DATED: November 9, 2015          By:   /s/ Shireen Hormozdi
                                 **Shireen Hormozdi**
                                 Hormozdi Law Firm, LLC
                                 1770 Indian Trail Lilburn Road, Suite 175
                                 Norcross, GA 30093
                                 Tel: 678-395-7795
                                 Fax: 866-929-2434
                                 E-mail: shireen@norcrosslawfirm.com
                                 Attorney for Plaintiff